AO 243 (Rev. 01/15)

Page 2

MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT
SENTENCE BY A PERSON IN FEDERAL CUSTODY

| United States District Court | District |
|---|---|

| Name (under which you were convicted): ROGERIO CHAVES SCOTTON | Docket or Case No.: 1260049 |
|---|---|
| Place of Confinement: D. RAY JAMES C.F. | Prisoner No.: 99370-004 |
| UNITED STATES OF AMERICA V. ROGERIO CHAVES SCOTTON | Movant (include name under which convicted) |

## MOTION

1. (a) Name and location of court which entered the judgment of conviction you are challenging:

   SOUTHERN DISTRICT OF FLORIDA

   (b) Criminal docket or case number (if you know): **1260049**

2. (a) Date of the judgment of conviction (if you know): **FEBRUARY 26, 2014**

   (b) Date of sentencing: **MAY 9, 2014**

3. Length of sentence: **108 MONTHS**

4. Nature of crime (all counts):

   18 U.S.C. § 1341 MAIL FRAUD, AND 18 U.S.C. § 1001(a)(2) FALSE STATEMENT

5. (a) What was your plea?  (Check one)

   (1) Not guilty [X]       (2) Guilty [ ]       (3) Nolo contendere (no contest) [ ]

   (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or what did you plead guilty to and what did you plead not guilty to?

   **N/A**

6. If you went to trial, what kind of trial did you have?  (Check one)       Jury [X]       Judge only [ ]

7. Did you testify at a pretrial hearing, trial, or post-trial hearing?       Yes [ ]       No [X]

8. Did you appeal from the judgment of conviction?       Yes [X]       No [ ]

9.   If you did appeal, answer the following:

(a) Name of court:  ELEVENTH CIRCUIT

(b) Docket or case number (if you know):  14-12228

(c) Result:  AFFIRM

(d) Date of result (if you know):  APRIL 12, 2016

(e) Citation to the case (if you know):  unknow

(f) Grounds raised:
   1) JURY ISSUE
   2) SPREADSHEETS VIOLATION
   3) MOTION FOR MISTRIAL
   4) WRONGFULLY LOSS AMOUNT.

(g) Did you file a petition for certiorari in the United States Supreme Court?   Yes [X]   No [ ]

   If "Yes," answer the following:

   (1) Docket or case number (if you know):  16-6749

   (2) Result:  DENIED

   (3) Date of result (if you know):  DECEMBER 12, 2016

   (4) Citation to the case (if you know):  unkown

   (5) Grounds raised:

        SAME ON THE APPEAL IN FRON ELEVENTH CIRCUIT.

10.  Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications, concerning this judgment of conviction in any court?
     Yes [X]   No [ ]

11.  If your answer to Question 10 was "Yes," give the following information:

(a) (1) Name of court:  SOUTHERN DISTRICT COURT, ELEVENTH CIRCUIT, SUPREME COURT

   (2) Docket or case number (if you know):  to many motion, see docket

   (3) Date of filing (if you know):  DIFFERENT MOTIONS

   (4) Nature of the proceeding:  RULES 33(b) NEW TRIAL.

   (5) Grounds raised:

        PLEASE SEE MEMORANDUM

(6)   Did you receive a hearing where evidence was given on your motion, petition, or application?

Yes ☐      No ☒

(7)   Result: DENIED WITHOUT ANY EXPLANATION FROM THE COURT.

(8)   Date of result (if you know): SEE DOCKET CASE

(b) If you filed any second motion, petition, or application, give the same information:

(1)   Name of court: SEE CASE DOCKET

(2)   Docket of case number (if you know): MORE THAN 50 MOTIONS WAS FILED

(3)   Date of filing (if you know):

(4)   Nature of the proceeding:

(5)   Grounds raised:

(6)   Did you receive a hearing where evidence was given on your motion, petition, or application?

Yes ☐      No ☒

(7)   Result: DENIED WITHOUT ANY EXPLANATION FROM THE COURT

(8)   Date of result (if you know):

(c) Did you appeal to a federal appellate court having jurisdiction over the action taken on your motion, petition, or application?

(1)   First petition:      Yes ☒      No ☐

(2)   Second petition:      Yes ☒      No ☐

(d) If you did not appeal from the action on any motion, petition, or application, explain briefly why you did not:

12.   For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

SEE DOCKET

AO 243 (Rev. 01/15)

**GROUND ONE:** WHETER MR. SCOTTON'S DENIAL OF EFFECTIVE ASSISTANCE BY AN ATTORNEY DURING PRETRIAL VIOLATED HIS CONSTITUTIONAL RIGHTS.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

NO ONE ATTORNEY HAS DONE ANY PREPRARATION FOR TRIAL, NO NVESTIGATION NO WITNESS INTERVIEW, NO DISCOVERE OR EVIDENCE REVIEWED.

(PLEASE SEE MEMORANDUM OF LAW)

(b) **Direct Appeal of Ground One:**

(1)  If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐    No ☒

(2)  If you did not raise this issue in your direct appeal, explain why:

APPEAL ATTORNEY FAILED TO INCLUDE IN THE BRIEF APPEAL AS WAS REQUESTED BY THE PETITIONER.

(c) **Post-Conviction Proceedings:**

(1)  Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐    No ☒

(2)  If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition:   N/A

Name and location of the court where the motion or petition was filed:


Docket or case number (if you know):

Date of the court's decision:   N/A

Result (attach a copy of the court's opinion or order, if available):


(3)  Did you receive a hearing on your motion, petition, or application?

Yes ☐    No ☒

(4)  Did you appeal from the denial of your motion, petition, or application?

Yes ☐    No ☒

(5)  If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐    No ☒

(6)  If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

**N/A**

Docket or case number (if you know):

Date of the court's decision:        **N/A**

Result (attach a copy of the court's opinion or order, if available):

(7)  If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:        **APPEAL ATTORNEY FAILED TO APPEAL AS WAS REQUESTED.**

**GROUND TWO:** WHETHER APPEAL ATTORNEY INEFFECTIVENESS AND CONFLICT OF INTEREST PREVENTED MR. SCOTTON FROM SUBMITTED VALID CLAIMS FOR THE COURT APPEALS REVIEW, VIOLATED HIS CONSTITUTIONAL RIGHTS AND DUE PROCESS RIGHTS.

(a)  Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

IN THE EARLY STAGE OF THE APPEAL, THE PETITIONER ASKED HIS ATTORNEY TO FILE MOTION FOR RELEASE AS WELL NUMEROUS ISSUES THAT OCCURRED DURING TRIAL THAT VIOLATED HIS SUBSTANTIAL RIGHTS. THE ATTORNEY FAILED TO DO SO AND CONSEQUENTLY HE VIOLATED THE PETITIONER RIGHTS. (PLEASE SEE THE MEMORANDUM)

(b)  **Direct Appeal of Ground Two:**

(1)  If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐     No ☒

(2)  If you did not raise this issue in your direct appeal, explain why:

I DIDN'T EXPECTED THAT MY APPEAL ATTORNEY WOULD ENGAGE IN SUCH VIOLATIONS.

(c)  **Post-Conviction Proceedings:**

(1)  Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐     No ☒

(2)   If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition:                    **N/A**

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:                  **N/A**

Result (attach a copy of the court's opinion or order, if available):

(3)   Did you receive a hearing on your motion, petition, or application?
        Yes ☐        No ☒

(4)   Did you appeal from the denial of your motion, petition, or application?
        Yes ☐        No ☒

(5)   If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?
        Yes ☐        No ☒

(6)   If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:
                    **N/A**

Docket or case number (if you know):

Date of the court's decision:                  **N/A**

Result (attach a copy of the court's opinion or order, if available):

        **n/A**

(7)   If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

GAINST ME.        I WOULD NEVER EXPECTED THAT THE ATTORNEY WILL TURNED

**GROUND THREE:**

(a)  Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

                    **N/a**

AO 243 (Rev. 01/15)

(b)  **Direct Appeal of Ground Three:**

  (1)  If you appealed from the judgment of conviction, did you raise this issue?

   Yes ☐   No ☒

  (2)  If you did not raise this issue in your direct appeal, explain why:

   **N/A**

(c)  **Post-Conviction Proceedings:**

  (1)  Did you raise this issue in any post-conviction motion, petition, or application?

   Yes ☐   No ☒

  (2)  If you answer to Question (c)(1) is "Yes," state:

  Type of motion or petition:     **n/A**

  Name and location of the court where the motion or petition was filed:

  Docket or case number (if you know):

  Date of the court's decision:     **n/a**

  Result (attach a copy of the court's opinion or order, if available):

  (3)  Did you receive a hearing on your motion, petition, or application?

   Yes ☐   No ☒

  (4)  Did you appeal from the denial of your motion, petition, or application?

   Yes ☐   No ☒

  (5)  If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

   Yes ☐   No ☒

  (6)  If your answer to Question (c)(4) is "Yes," state:

  Name and location of the court where the appeal was filed:

           **n/a**

  Docket or case number (if you know):

  Date of the court's decision:     **n/a**

  Result (attach a copy of the court's opinion or order, if available):



           **n/a**

(7)  If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

n/a

**GROUND FOUR:**

n/a

(a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

n/a

(b)  **Direct Appeal of Ground Four:**

(1)  If you appealed from the judgment of conviction, did you raise this issue?
Yes ☐     No ☒

(2)  If you did not raise this issue in your direct appeal, explain why:

n/s

(c)  **Post-Conviction Proceedings:**

(1)  Did you raise this issue in any post-conviction motion. petition, or application?
Yes ☐     No ☒

(2)  If you answer to Question (c)(1) is "Yes," state:
Type of motion or petition:

Name and location of the court where the motion or petition was filed:

n/a
Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order. if available):

(3)   Did you receive a hearing on your motion, petition, or application?

Yes ☐      No ☒

(4)   Did you appeal from the denial of your motion, petition, or application?

Yes ☐      No ☒

(5)   If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐      No ☒

(6)   If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

**n/a**

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

**n/a**

(7)   If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**n/a**

13.   Is there any ground in this motion that you have <u>not</u> previously presented in some federal court?  If so, which ground or grounds have not been presented, and state your reasons for not presenting them:

**n/a**

14.   Do you have any motion, petition, or appeal <u>now pending</u> (filed and not decided yet) in any court for the you are challenging?      Yes ☐      No ☒

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.      **PLEASEE THE DOCKET.**

AO 243 (Rev. 01/15)                                                                            Page 1.

15.   Give the name and address, if known, of each attorney who represented you in the following stages of the you are challenging:

      (a) At the preliminary hearing:   **FREADMAN**

      (b) At the arraignment and plea:   **N/A**

      (c) At the trial:   **PRO SE**

      (d) At sentencing:   **JASON KREISS**

      (e) On appeal:   **RICHARD KLUGH**

      (f) In any post-conviction proceeding:

          **N/a**

      (g) On appeal from any ruling against you in a post-conviction proceeding:

          **PRO SE**

16.   Were you sentenced on more than one court of an indictment, or on more than one indictment, in the same court and at the same time?      Yes [X]      No [ ]

17.   Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?      Yes [ ]      No [X]

      (a) If so, give name and location of court that imposed the other sentence you will serve in the future:

          **N/a**

      (b) Give the date the other sentence was imposed:

      (c) Give the length of the other sentence:   **N/A**

      (d) Have you filed, or do you plan to file. any motion, petition, or application that challenges the judgment or sentence to be served in the future?      Yes [ ]      No [x]

18.   TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion.*

          **THIS SECTION 2255 IS TIMELY FILED AS THE PETITIONER CONVICTION BECAME FINAL ON DECEMBER 12, 2016.**

---

\* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2255, paragraph 6, provides in part that:

    A one-year period of limitation shall apply to a motion under this section.  The limitation period shall run from the latest of –

    (1)   the date on which the judgment of conviction became final;

    (2)   the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making such a motion by such governmental action;

    (3)   the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

    (4)   the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

AO 243 (Rev. 01/15)

Page 13

Therefore, movant asks that the Court grant the following relief: to vacated the conviction and sent this case for a new trial. The Petitioner also requested to be release pending the resolution of this § 2255 to avoid make this appeal nugatory and worthless.

or any other relief to which movant may be entitled.

**RE-SENTENCE TO A TIME SERVED AND RELEASE WITHOUT ANY DEALY.**

Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Motion under 28 U.S.C. § 2255 was placed in the prison mailing system on

(month, date, year)

Executed (signed) on  *Demser 11, 2017*          (date) *12/11/2017*

Signature of Movant
**ROGERIO  CHAVES  SCOTTON**
**REG NO: 99370-004**

If the person signing is not movant, state relationship to movant and explain why movant is not signing this motion.

UNITED STATES DISTRICT COURT
IN THE
SOUTHERN DISTRICT OF FLORIDA

ROGERIO CHAVES SCOTTON,               CASE NO: 1260049
        PETITIONER ,


        v.


UNITED STATES OF AMERICA,
        RESPONDENT,
_____/


### PETITIONER MOTION TO VACATE, SET ASIDE THE CONVICTION OR TO CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255.


Comes now, the Petitioner Rogerio Chaves Scotton, by and through pro se, respectfully moves this Honorable Court with the motion to vacate, set aside the conviction or to correct the sentencing pursuant to 28 U.S.C. § 2255. In support of his motion, the Petitioner states as follows:


### INTRODUCTION


On March 8, 2012, an indictment was lodged against the Petitioner Rogerio Chaves Scotton, a Boca Raton businessman and professional international race car driver, charging him with the alleged offense of mail fraud pursuant to 18 U.S.C. § 1341.

On June 18, 2013, a superseding criminal indictment was filed by

the government dismissing the original indictment. Additional to the 26 counts of mail fraud, the government added one more count of mail fraud.

On July 18, 2013, the Petitioner was charged with a second superseding indictment of twenty seven counts of mail fraud pursuant to 18 U.S.C. § 1341 and two counts of making false statements to a government agency pursuant to 18 U.S.C. § 1001(a)(2). See, D.E.-94.

On January 26, 2014 trial began. Despite numerous times the Petitioner requested lawyer representation, he was denied after one Public Defendant and two-Court appointed attorneys who did not provide the Petitioner with any meaningful legal assistance.

On February 26, 2014, the Petitioner was convicted as charged, despite the fact that the jury informed the Court they had doubts on the second Superseding indictment which was based solely on manufactured, unaudited and unverified spreadsheets accompanied by false and contradictory testimony.

The Petitioner filed an appeal. However, due to conflict with the Court appointed attorney, he was precluded from submitting substantial claims and evidence for the appeal Courts review. Consequently, the appeal Court affirmed the conviction on April 12, 2016, after an unprecesented seven extensions made solely by the appeal attorney.

On October 20, 2016, the Petitioner submitted a Petition for Writ of Certiorari as a pro se which the Supreme Court denied on December 12, 2016.

Therefore, the Petitioner is hereby attempting to prove his innocence by timely submission of this § 2255, in which he claims violate his contitutional rights and requesting this Court after meaningful review, to vacate his conviction in the interests of justice.

## GROUND ONE:

### WHETHER MR. SCOTTON'S DENIAL OF EFFECTIVE ASSISTANCE BY AN ATTORNEY DURING PRETRIAL VIOLATED HIS CONSTITUTIONAL RIGHTS.

The Petitioner contends that he was denied the right to bail and consequently was denied the opportunity to research and retain a lawyer of his choice.

With no other resource available, the Petitioner's only option was to accept the attorney appointed by the Court.

Pretrial investigation and preparation are key to effective representation by counsel. The attorneys appointed by the Court performed none of those essential tasks. The Attorney did not interview or attempt to interview a single person prior to trial. The attorneys failed to review discovery and evidences. In fact, 6 of those discovery cd's allegedly containing spreadsheets were found by the Petitioner himself during trial, to be blank. Not one motion was filed by the Court appointed Attorneys on the Petitioner's behalf. His numerous substantial rights were ignored and violated because the attorneys failed to interpret the law and enforce it. They have ignored the true facts and took the easy path in hand with the prosecution.

The Petitioner contends that he was denied the right to have effective honest assistance from a lawyer, and consequently he was rendered no possibility of professional defense as he was forced to represent himself.

## PUBLIC DEFENDANT CHANTEL DOAKES

On one occasion F.P.D. Doakes told the Petitioner that he should plead guilty because the government had a document that could link him to a specific package. This particular package was allegedly shipped from a bike store located in California to a city in Brazil. Ms. Doakes claimed that she had contacted the bike store to ask whether the store had done any business with the Petitioner. The store denied this. Ms. Doakes also Allegedly contacted the individual in Brazil who the store shipped the package to, yet the individual denied any such business with the Petitioner or even knowing of him.

After the Petitioner was provided with this information, he asked Ms. Doakes whether she investigated how the bike store shipped the package to Brazil and/or how the individual in Brazil had received such a package. Ms. Doakes did not ask or conduct any further investigation into this matter. She then insisted that the government had a way to link the package to Petitioner and that Petitioner should plead guilty nevertheless to avoid a long term of imprisonment.

The Petitioner also provided to Ms.Doarkes a sworn statement and video of interview from Osvaine Duarte taken by Brazilian authorities. Duarte was the third party shipping company used by the Petitioner. In the statement and video Duarte clearly states his involvement in shipping of items to Brazil. Ms. Doarkes failed to interview Osvaine Duarte despite the instruction from the Petitioner. The record of this case clearly shows that Ms. Doakes did virtualy nothing to help the Petitioner.

Recently, the Petitioner submitted an information affidavit to the office of Ms. Doarkes which she has thus far failed to respond to.

Subsequent to this further failure of proper investigation, the Petitioner

( 4 )

requested the Court to withdraw Ms. Chantel Doarkes as defense counsel.


## CJA ATTORNEY LANCE ARMISTRONG


This particular attorney met with the Petitioner on only two occasions. On each occasion he had no documents, legal pad or even a pen. He advised the Petitioner to plead guilty based only on the federal conviction rate being extremely high. During his second visitation at F.D.C. Miami on Sunday afternoon, the Petitioner noticed as well as having no brief-case, pad or pen, there was a strong smell of alcohol from him.

The Petitioner requested the attorney for an investigator which the attorney dismissed stating that he did not believe in investigators, and that I should plead guilty because my case didn't carry more than 2 years in prison.

The Petitioner asked the attorney who was given authorization to call his relatives, to meet with him at an Apple bees restaurant in Hollywood. The Petitioner also asked the attorney why he told the Petitioner's family to ask the Petitioner to plead guilty when he had not even reviewed any discovery or evidence. The attorney had no response to this question.

There is no evidence or record that could show that this attorney had prepared for a trial. The Petitioner also submitted an information affidavit to the attorney who failed to answer.

Consequently to this inappropriate behavior from this attorney, the Petitioner filed a motion to withdraw the attorney.


## CJA ATTORNEY STUART ADELSTEIN

The first meeting was in Broward county jail in January 2013. The attorney

introduced himself and advised the Petitioner that no motion for bail would
be filed on his behalf as bail had already been denied. This was not the
case as denial of bail was made conditional by the judge.

On the second visitation to F.D.C. Miami, after spending more than an
hour with another 7 different clients, the attorney spent 3 minutes with
the Petitioner to inform him that he was presently inspecting the discovery
cds and would talk to the Petitioner the following week.

In the following week, the same scenario occurred. After spending hours
with others clients, the attorney told the Petitioner that he had contacted
the government office to request the discovery information. This was despite
that the previous week he told the Petitioner that he was already inspecting
the discovery information.

The Petitioner then asked the attorney if he had done anything with
his case and if he had interviewed any witnesses. The attorney had no response
The Petitioner than asked the attorney to file a motion for bail which he
denied then threatening the petitioner with a potential 20 years in prison
by refusing to plead guilty. The Petitioner requested the attorney to file
a motion to withdraw from the case. He then told Petitioner he was looking
into the possibility of using a bail bond. Instead of filing a motion to
withdraw, the attorney sent Davis Rodriguez to the Petitioner's mothers apart-
ment. Rodriguez took $16,000.00 from the Petitioner's Mother with the promise
of securing a $100 .000.00 nebbia bond. Neither the motion to withdraw or
the nebbia bond was filed to Court for the Petitioner. The $16,000.00 was
never returned to the Petitioner's family.

The Petitioner then filed a lawsuit against the attorney and a motion
to the Court to withdraw the attorney. The Petitioner's sixth amendment
right was in this case seriously violated.

An information affidavit was also submitted to the office of Adelstein who has failed to respond.

## JASON KREISS-SENTENCE ATTORNEY

During sentencing, the attorney complained to Court that he was instructed by the Court not to review any discovery because he would not be compensated. The Court then told him this was not correct but that he was not to prepare for trial.

Therefore, the attorney never inspected any document, discovery cd's or the inaccurate spreadsheets which ultimately cost the Petitioner a high sentence. Had the attorney investigated the accuracy of those spreadsheets in detail or properly prepared for the sentence hearing, there is a substantial possibility that the Petitioner would have received a much lower sentence or a new trial.

The Petitioner received ineffective assistance during his sentencing and the attorney himself made the statement that he had not prepared for sentence and had never reviewed the inaccuracy of those spreadsheets. The Petitioner's constitutional rights to a fair and reasonable sentence were violated. Yet, he was denied due process.

Despite the false statements made by officials of the Court, the record of this case did not show any motion or any of those tasks required by law was conducted by any one those attorneys mentioned above. In fact, not one attorney responded to those information affidavits submitted by the Petitioner. The record of this case shows that the attorneys could not honestly respond or answer to the affidavit. Hence, silent equate to true.

If we stand by justice, then this conviction must be vacated and the case sent to a new trial.

**GROUND TWO:**

**WHETHER APPEAL ATTORNEY INEFFECTIVENESS AND CONFLICT OF INTEREST PREVENTED MR. SCOTTON FROM SUBMITTING VALID CLAIMS FOR THE COURT APPEALS REVIEW, VIOLATES HIS CONSTITUTIONAL RIGHTS AND DUE PROCESS RIGHTS.**

The Petitioner contends that his appeal attorney provided ineffective assistance during the early stages of the direct appeal. In fact upon the Court of appeals affirming the conviction, the Petitioner and his family requested from attorney Klugh all his case file, evidence and discovery cds which the attorney claimed that he never had.

After the Petitioner filed motion to compel the appeal attorney in Distristric Court as well the Court of Appeals, attorney Klugh informed the Court that he had found Mr. Scotton's case files and discovery cds in another office which he shared with other lawyers.

The Petitioner contends that the appeal attorney provided ineffective assistance and his ineffectiveness denied the Petitioner the opportunity to prove his innocence and submit numerous claims and violation which occurred during pretrial, trial and sentencing. Subsequently due to the attorneys lack of preparation and failure to include numerous important facts in the appeal brief, the Petitioner constitutional rights were violated. Among the ineffectiveness, the attorney failed to provide to the Petitioner legal assistance including, (1) failure to file a motion to release pending appeal which the Petitioner requested on many occasions. The Petitioner then filed the motion to release as a pro se, in which both Courts denied and mentioned that the Petitioner has a lawyer and should ask him to do. (2) the attorney failed to review the case file and evidence provided by the Petitioner which highlighted the inaccuracy of the spread sheets, and failed to review the discovery cds of which 6 were blank and did

(8)

not contain    any verified business records; (3) he failed to include on the appeal brief as requested by the Petitioner, all BRADY violation's in the case, (4) failed to include  all due process violations, (5) he failed to include  and request sentence correction pursuant to amendment 791 which should reduce  two levels in the Petitioner's guideline, (6) he failed to submit  all GIGLIO violations that occurred during pretrial, trial and sentence, (7) he failed to object   to the sentence enhancement, which lacke evidence on the obstruction of justice and sophisticated means, and (8) he falied to dispute during the appeal, the indictment which fails the requirement and of which the charges of mail fraud are wrongfully lodged.

THe Petitioner contends that this case displayed numerous errors and violations which should have stopped the trial before it began. Other respected attorneys informed the Petitioner and his family that his conviction should be vacated due to those numerous errors and violations that had occurred. The Petitioner unfortunately could not afford to retain those attorneys. However, he should not be denied fair justice because of his lack of  financial means.

The evidence in this § 2255 will clearly demonstrate that the Court could not have any doubt that Mr. Scotton was wrongfully charged, convicted and sentenced to the high end of the guideline.

Therefore, after the Court's meaningful review of the record, facts and evidence, the Court should make the decision in the interest of justice to vacate this conviction and sent to dismiss, sent to a new trial or the alternative to a re-sentence.

## ARGUMENT OF AUTHORITIES

### I. WHETHER MR. SCOTTON'S DENIAL OF EFFECTIVE ASSISTANCE BY AN ATTORNEY DURING PRETRIAL VIOLATED HIS CONSTITUTIONAL RIGHTS.

The Sixth amendment guarantees a defendant the right to counsel during certain post-indictment-identification procedures. UNITED STATES v. WADE, 388 U.S. 218, 224 (1967). In WADE, the sixth amendment right to counsel attaches to "critical stages" of pretrial proceedings. 388 U.S. at 244; See also POWELL v. ALA, 287 U.S. 45, 57-59 (1932)(period from arrangement to trial is "perhaps the most critical period of the proceedings" where defendant must have "sufficient time to advise counsel"). Concerned that a suggestive pretrial lineup would lead to the conviction of an innocent person, WADE, 388 U.S. at 288-29.

Here in this case, the Petitioner asserts that the Court appointed attorney provided the Petitioner with the barest of legal assistance which proved to be totally inadequate in his defense. Investigation work not carried out proficiently to explore the full extent and truth of the facts, lack of trial preparation, failure to inform the Petitioner he was entitled to obtaine a crucial witness testimony by means of a rogatory letter. The attorney's ineffectiveness caused prejudice and deprived the Petitioner of a fair trial. The attorneys failed to obtain legally relevant facts from the Petitioner to use, failed to pursue leads provided by the Petitioner and failed completely to garner corroborating evidence for the Petitioner to use to dispute government claims.

The record of this case clearly show the attorneys omission and failure to exercise the skills and judgment of a competent criminal defense attorney.

They did not act in a competent manner because inadequate investigation took place, and discovery was not reviewed. In fact, during trial the government introduced spreadsheets as evidence which the Petitioner objected to, and stating that they were never provided to him. See, D.E.-511:126-127-128-129; D.E.-470:92-93-94; D.E.-470:104-105. The government alleged they were provided on the discovery cds.

The attorneys incompetence was prejudicial to the Petitioner and prevented him from a fair trial. WASHINGTON v. STRICKLAND, 693 F.2d 1243, 1258 (5th cir. 1992); GLOVER v. UNITED STATES, 531 U.S. 198, 201 (2001); WILLIAM v. TAYLOR, 529 U.S. 362, 396-91 (2006); UNITED STATES v. BRADLEY, 42 Ohio St. 3d 136 (1986); BLANKEN v. JOHNSON, 118 F.3d 312, 318 (5th cir. 1992). See also, exhibit 1.

The Petitioner asserts he was denied the key elements including investigation and preparation during pretrial because his Court appointed attorneys only offered as a defense, a plea agreement to avoid high prison time. RUMMEL v. ESTELLE, 590 F.2d 103, 104 (5th cir. 1974)(it is important to interview witness, adequate consultation, adequate investigation); GOODWIN v. BALKCOM, 684 F.2d 794, 804-05 (11th cir. 1982); UNITED STATES v. PORTERFIELD, 624 F.2d 122, 124 (10th cir. 1980); WOOD v. ZAHRADRICK, 578 F.2d 980, 982 (9th cir. 1978). See also, exhibit 2.

The attorneys did not perform adequate essential tasks for defense. It is impossible for any attorney to prepare effectively for a trial without interviewing witnesses, reviewing evidence, records, discovery or any required task. The attorneys in this case constantly advised the Petitioner that he should plead guilty despite his wish to prove his innocence at trial.

The Petitioner requests this Court to a meaningful review of the case

record and the evidence attached in this motion. After inspecting the records and applying the required laws and rules, this Court could clearly determine that the Petitioner's sixth amendment rights were violated. And since the violation is established, the Petitioner is entitled to relief without a showing of prejudice. <u>COOPER v. FITZHARRIS, 586 F.2d at 1328</u>.

The actions of the attorneys denied the Petitioner to a fair trial because attorneys ineffectiveness precluded the fact-finder from independently judging the merits of the case. <u>UNITED STATES v. CAMPBELL, 616 F.2d 1151, 1152 (9th cir. 1980) cert. Denied, 447 U.S. 910, 1000 S. Ct. 2998 64 L. Ed. 2d 861 (1980)</u>. Not one single motion was filed by the attorneys. See **exhibit 3**. The attorneys misplaced the Petitioner's discovery, evidence, personal files and documents. Numerous crucial evidence was misplaced and lost including Osvaine Duarte letter and video.

Other inmates constantly came back from the Court house to inform the Petitioner that an unidentified female had been seen shuffling through the Petitioner file boxes which was left by attorney Adelstein in the Court house. The Petitioner's files were left unsecured in a cell holding block at the Court house. Magistrate Judge Mattewman instructed the attorney to immediately  turn  over all the case files to the Petitioner at FDC Miami. instead, the attorney droped-off all unsecured files and documents in open Court which later was placed in a holding cell. Numerous intimate photos from  petitioner's wife Ailyn Mollinedo, were taken from the box as well as a family photo album including numerous images that could clearly establish the reality of the Petitioner's marriage.

Here in this § 2255, the Petitioner has sufficient evidence to meet

the initial burden of prejudice and inadequancies in counsel performance
in how it affected the outcome at trial. WOOD v. HARDNICK, 578 F.2d 980,
982 (4th cir. 1978); WASHINGTON v. STRACKLAND, 693 F.2d 1243, 1258 (5th
cir. 1982).

The Petitioner was denied the right to have honest and effective assistance
Consequently, he was rendered no possibility of a proficient and effective
defense as he was forced to represent himself.    ZAKRZEWSKI v. MCDONOUGH,
490 F.3d 1264, 1267 (11th cir. 2007)(quoting IDEM.CAM v. GORE, 761 F.2d
1549, 1551 (11th cir. 1985)).

The U.S. constitution sixth amendment guarantees to an accused in criminal
proceeding effective assistance of counsel. The right to counsel is so
precious that it cannot be denied without violating those fundamental
principles of liberty and justice which lie at the base of all the civil
and political institutions. KIMMELMAN v. MORRISON, 477 U.S. 365, 375 (1986);
MCMANN v. RICHARDSON, 397 U.S. 759, 771 (1970); POWELL v. ALABAMA, 287
U.S 45, 53 S. Ct. 55, 77 L. ed. 758 (1932). A defense counsel must do
his utmost to bring his legal acumen to bear on behalf of the defendant;
keep the defendant fully informed of developments in the case and consult
with the defendant on all major decisions to be made; conduct a reaso-
nable investigation which should include contacting potential witnesses;
prepare adequately and professionally for trial; and the bottom line,
serve as a vigorous and devoted advocate of the Petitioner's case. U.S. EX
REL. PARTEE v. LANE, 926 f.2d 694, 702 (7th cir. 1991). And those rights
extends to appeal. EVITTS v. LUCEY, 469 U.S. 387, 406, 83 L. Ed. 821,
105 S. Ct. 830 (1985); DOUGLAS v. CALIFORNIA, 372 U.S. 353, 83 S. Ct.
814 (1963).

The Petitioner contends that on many occasions, he advised the Court that he did not wish to represent himself and requested the Court to appoint a lawyer that could truly lend him effective assistance. The Court failed to do this. The Petitioner asserts that he never made a voluntary decision to represent himself, rather, he was forced to do so by lack of the correct support. Hence, the conviction and punishment of imprisonment in this case is invalid because the U.S. constitution guarantees a lawyer to a person brought to trial. And the waiver of attorney must be independently found in the structure and history of the U.S. Constitution. See <u>FARETTA v. CALIFORNIA, 422 U.S. 806, 832, 99 S. Ct. 2525, 45 L. Ed. 2d 562 (1975)</u>. The Supreme Court observed in other cases that where a defendant vehemently asserts his rights to self representation, it is not truly a case of a constitutional waiver of rights; It is a decision to assert one constitutional right instead of another. <u>MARSHALL v. ROGERS, 133 S. Ct. 1446, 1449, 185 L. Ed. 2d 540, 544 (2013)</u>; <u>EXREC. KONIGSBERG v. VINCENT, 526 F.2d 131 (2nd cir. 1975)</u>.

The Petitioner did not ever unequivocally invoke his Sixth amendment right  to self representation by simply rejecting the representation of the Court appointed Adelstein, with whom conflict was clear and which seriously-infected the Petitioner's case. In fact, during the hearing in July 2013 the attorney threatened to send the Petitioner to hospital: "...If we end up in a fight, one of us will go to a hospital and I assure you that will not be me".

The breakdown of communication and conflict between the Petitioner and attorney Adelstein began in the early stage when he was appointed. This continued after the attorney together with bondsman David Rodriguez took $16,000.00 of the Petitioner's family's money with promises of securing

a $100,000.00 nebbia bond. The attorney never filed any motion to the Court and the money was never recovered. David Rodriguez was later arrested in 2014 and charged in Broward County with the offense of 3rd degree theft and sentenced to 5 years probation and ordered to pay restitution to all victims including the Petitioner's family. See STATE OF FLORIDA v. DAVID RODRIGUEZ, 14014433CF10A; See also ROGERIO CHAVES SCOTTON v. ADELSTEIN, 062013CA017359A, (FLA CIr. CI JULY, 19 2013). See also, exhibit 4.

Then, instead of withdrawing the attorney completely from the case, the Court abused its discretion and ordered the attorney to continue in the case as a stand by attorney. The Court then repeated the same error by withdrawing Adelstein as stand-by attorney and returning attorney Chantel Doark with whom there had also been conflict.

To compel the Petitioner who was charged with a federal crime to undergo a pretrial with the assistance of an attorney with whom he had became embroiled in irreconcilable conflict was to deprive him of the effective assistance of any counsel whatsoever. BROWN .v CRAVEL, 424 F.2d 1166(9th cir.1970).

In most cases, a claim of ineffective assistance of counsel is analyzed under the framework set forth in STRACKLAND v. WASHINGTON, 466 U.S. 668, 687 (1984), which requires a defendant to show a "reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." Id At 668, 694. However, where the records suggested or is clear that a defendant has been completely "denied counsel at a critical stage" of a criminal case, his substantial rights was violated.

Both, the Supreme Court and the Appeal Court have recognized that such claims should be analyzed under UNITED STATES v. CRONIC, 446 U.S. 685, 694-696 (2002); HUNTER v. MOORE, 304 F.3d 1066, 1069-1070(11th cir. 2002). The Petitioner needs no reason hereby to specifically show prejudice when he was completely denied counsel at a critical stage in his case is "so

fundamental" a right-so essential to any fair proceeding-that its complete denial is never harmless. CHAPMAN v. CALIFORNIA, 386 U.S. 18, 23 N.8 (1967). In fact the Supreme Court held in CRONI that such circumstances "are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." 466 U.S. at 648. The denial of counsel at any critical stage of a proceeding renders the proceeding inherently "unfair." Id at 659.

The Petitioner requests the Court to meaningful review of all facts, records and evidences in this motion as well as the entire case. And with the required urgency to avoid this continued unfair process which has led to a miscarriage of justice.

The Petitioner is prepared for the expansion of the record and for the return to the Court in Miami, Florida before a neutral magistrate judge for an evidentiary hearing on the issues raised hereby in and other factual discrepancies currently in the case at bar. The conviction should be vacated.


## II. WHETHER APPEAL ATTORNEY INEFFECTIVENESS AND CONFLICT OF INTEREST PREVENTED MR. SCOTTON FROM SUBMITTING VALID CLAIMS FOR THE COURT OF APPEALS, VIOLATED HIS CONSTITUTIONAL AND DUE PROCESS RIGHT

The Petitioner contends that upon receiving his term of sentence, the Petitioner asked attorney Jason Kreiss if he knew any good appeal attorney. In response Mr. Kreiss gave the name of two lawyers. One included attorney Richard Klugh. Mr. Kreiss further mentioned that the Petitioner should pray that the Court appointed to him attorney Richard Klugh to appeal his case. The Petitioner didn't pray as suggested, however on May 28, 2014, the Court appointed Richard Klugh to appeal the Petitioner conviction.

The Petitioner asserts that he met with Richard Klugh on one occasion in F.D.C. Miami for 4 minutes to inform     the Petitioner that he was appointed to the case to provide legal assistance during the direct appeal. The appeal attorney further asked the Petitioner what he had done to get Judge Rosenbaum so Angry to give the Petitioner such a harsh sentence.

The evidence hereby attached and the case record will clearly show that the appeal attorney failed to inspect important documents and evidence provided by the Petitioner. Discovery cds, case files and trial material was delivered to his office by the Petitioner's family. The attorney failed to correct errors mentioned on the trial transcripts by failing to request the verbal audio recording, also giving the Petitioner misleading information that in "Federal Courts there are no audio recordings of trial trancripts. See, **exhibit 5.**

The attorney misled the Petitioner during the entire course of his direct appeal. He promised to (1) review the brief draft from the Petitioner, (2) insert the Petitioner's claims in the final brief, (3) allowed the Petitioner to review the final brief for approval before filing and (4) to file a motion to release pending appeal as was requested by the Petitioner on many occasions. See, **exhibit 5.**

## A) FAILURE TO FILE A MOTION TO RELEASE PENDING APPEAL

On many occasions the Petitioner requested the appeal attorney to file a motion to release pending the resolution of the appeal since the Petitioner was incarcerated over 25 months and since his appeal has raised substantial questions of the law and facts.

The attorney misled the Petitioner by failing to file. See **exhibit 5**.

On July 9, 2014, attorney Cynthia Rodriguez who claimed to work with Richard Klugh, came to F.D.C. Miami. The Petitioner provided the attorney with all discovery cd's given by the government which were blank.

The Petitioner send a letter to Klugh on <u>October 25, 2014</u>. In this letter, the Petitioner requested the attorney for the verbal audio recording of the trial because the trancript was missing information and was innacurate. The attorney responded on <u>November 3, 2014</u> and informed the Petitioner that in federal Court, there are no audio recordings of trial. See **exhibit 5 (attorney letter date 11/3/2014).**

On <u>November 17, 2014</u>, the Petitioner sent to attorney Klugh a brief appeal and a motion for bond which the Petitioner himself had drafted.

On <u>December 2, 2014</u>, the attorney replied and informed the Petitioner that he would prepare a bond motion and send it for the Petitioner to review. Once completed, he would file said motion. See, **exhibit 5 (attorney letter date December 2, 2014).**

On <u>**January 20, 2015**</u>, the Petitioner again requested the attorney to file a motion for bail and to include other issues on the brief. Attorney Klugh claimed now that his first priority was to file the brief and once filed he would filed then file the bond motion. The attorney further mendioned he had    received the Petitioner's edits on the brief and would reply accordingly, which he never did.

On <u>September</u> 7, 2015, the Petitioner sent another letter to the attorney who responded on <u>September 25, 2015</u>. In the response, the attorney now suggested that it was not a good idea to seek bond until at least the Court granted an oral argument in the case. This was despite many previous occasions

he promised to file the motion. See, **exhibit 5 (attorney letter September 25, 2015.**

The right to consideration of bail pending appeal exists after conviction. UNITED STATES v. BALLONE, 762 F.2d 1381, 1382 (11th cir. 1985)(per curiam) (defendants "right" to bail pending appeal could not be assessed until after their convition). Thus, attorney Klugh violated this right and misled the Petitioner on many occasions during the appeal. Bail pending appeal need not determine whether it is likely that the defendant actually will prevail. UNITED STATES v. GIANGOLA, 754 F.2d 898, 901 (11th cir. 1995). Hence, despite the many times the Petitioner asked the attorney to file a motion for bail, the attorney promised to file but failed to do so.

The Petitioner attempted to file a motion to release pending appeal as a pro se to this Court as well as to the appeal Court. Both were denied and the Courts suggested that he should ask his attorney to file said motion. See, **exhibit 6 (Scotton's motion requesting release).**

The Petitioner asserts that he asked his attorney on several occasions to file a motion for release. However, the attorney failed to do so. Consequently, the Petitioner's due process was violated. Had the Petitioner been granted release, he could have gained numerous exculpatory evidence, reviewed documents and added his input to the appeal brief.

## B) FAILED TO REVIEW EVIDENCE, CASE FILES AND DISCOVERY CD'S.

On many occasions after the appeal Court confirmed the conviction, the Petitioner asked the attorney to return all the case evidence, files and discovery cd's. The attorney claimed that he didn't have any of those materials which clearly suggested that the attorney had never reviewed

anything prior to filing the appeal brief. The attorney only relied on the transcripts of trial to appeal this case. See **exhibit 7(letter to the attorney and motion to compel).**

The evidence hereby attached demonstrates clearly that counsel's performance fell below an objective standard of reasonableness, and his performance prejudiced the Petitioner, resulting in an unreliable or fundamentally unfair outcome of the appeal. STRICKLAND v. WASHINGTON, 466 U.S. 668, 687-88 (1984); GLOVER v. UNITED STATES, 531 U.S. 198, 201, 204(2001); VIRGIL v. DRETICE, 466 F.3d 598, 613 (5th cir. 2006); GENTRY v. SERVIER, 547 F.3d 838, 851-52 (7th cir. 2010).

Therefore, the attorney failed to review important documents and the accuracy of the spreadsheets prior to filing the appeal brief. His failure to inspect and review discovery, evidence and documents clearly demonstrates failure to provide effective assistance during the appeal. The Petitioner's constitutional right  to have an effective and competent attorney was violated.

**C) FAILURE TO INCLUDE BRADY ISSUE IN THE APPEAL BRIEF.**

1. PRETRIAL REPORT REFERRED BY ICE.

On April 2, 2012, magistrate Judge Snow's detention order states that

> ..."According to information from ICE, Scotton was currently appealing his I-485 application.

See **exhibit 8.**

During the detention hearing on March 29, 2012, the prosecution showed to Court an undated and unsigned letter purporting to be a final decision from the U.S. Citizenship and Immigration services denying the Petitioner's I-485 application. See **exhibit 9.** However, **no decision from immigration was issued at the time.**

On numerous occasions, the Petitioner requested the document that showed the Petitioner was appealing his I-485 application mentioned by ICE at the time. However, the Petitioner was never provided with any such document by his attorneys or the Court.

The Petitioner asserts that he requested attorney Klugh to include this BRADY violation in the appeal brief which as such, was only used with the intent to deny the Petitioner's right to bail. Hence, the attorney failed to appeal this misconduct and to compel the BRADY material.

## 2. PETITIONER A-FILE.

Since the early stages of this case, the government alleged that the Petitioner's marriage was a sham even though it is not an element of the alleged offense in the indictment. Eventually the Petitioner was charged with provi-ding  false statements pursuant to 1001(a)(2) in count 28 and 29.

Attorney Klugh was requested to compel the entire A-File and appeal this BRADY violation because the A-file may have contained exculpatory evidence that the government had never handed over to the Petitioner, thereby undermining his due process rights and undermining the integrity of the trial. MONROE v. ANGELONE, 323 F.3d 286, 300 (4th cir. 2003)(undisclosed evidence favorable to accused because it could have been used to impeach government witness); UNITED STATES v. BLAND, 517 F.3d 930, 934 (7th cir. 2008)(materials related to accused would impeach credibility).

The government withheld information contained in the A-File pursuant to 5 U.S.C. § 552(b)(3), (b)(6), (b)(7)(C) and (b)(7)(e).

Because the government accused Scotton as set forth in count 28 and 29, he is entitled to have a complete record of all documents from his A-Fille

which was redacted. See, **exhibit 10.** Nonetheless, Klugh failed to include
this BRADY violation and to compel the unredacted A-FILE.

### 3. SUPPRESSION OF DUARTE CONFESSION VIDEO AND LETTER.

The Petitioner contends that he requested his appeal attorney to include
in his appeal brief that the government had suppressed OSVAINE DUARTE video
and letter where Duarte testified that the Petitioner was not one of his
clients.

Osvaine Duarte was the owner of Brasil USA import & export which provided
shipping services for the Petitioner. Although the original letter--had--
been--suppressed, the Court had seen Duartes's confession letter, knew
that he was living in Atlanta and had provided shipping services through
his company Brazil USA Import & Export. See EXHIBIT 11(**Duarte letter and
Court transcript).**

The appeal attorney failed to include this BRADY material in the appeal
BRIEF, had the Petitioner been allowed to introduce this material and/or
Mr. Duarte testimony under a letter rogatory, the outcome of the trial
could well have been different.

### 4. BLANK DISCOVERY CD'S.

During the trial the government introduced numerous spreadsheets conta-
ining thousand of packages allegedly shipped by the Petitioner.

The Petitioner objected to the introduction of the spreadsheets because
the discovery CD's were blank. D.E.-511:126-127-128-129; D.E.-470:92-93-
94; D.E.-470:104-105. Therefore, the Petitioner was not afforded the oppo-
rtunity to inspect those spreadsheets for accuracy. See, **exhibit 12.**

The Court requested the government to produce further cds to the Petitioner during the course of trial, which the government provided. These new cd's only contened those spreadsheets which new evidence shows were not accurate, were made by the government after witness testimony and didn't included any audited and verified business records. There are no documents from those thousands of packages shipped all over the U.S. to Brazil or any link to the Petitioner. See, **exhibit 12.**

Despite the previous trial judge mentioning on record that the government had given those business records to the Petitioner, the cds shows that they had not. Witnesses have testified that they didn't exist. The appeal attorney never inspected those cd's which were provided to him or inspected the accuracy of the spreadsheets. His failure to submit this BRADY violation on the appeal brief violated the Petitioner's constitutional rights to an effective appeal.


### 5. B&H PHOTO VIDEO INFORMATION.

The government alleged on the indictment that the Petitioner had created an unauthorized FedEx account under B&H Photo Video company which is a New York based company.

The appeal attorney failed to review the case file before submitting the appeal brief. Therefore, providing ineffective assistance to the Petitioner where he had made available newly discovery evidence that (1) shows that the government knew that B&H Photo FedEx account was a legitimate account opening in 2001 and before the Petitioner opened his internet business, (2) that B&H Photo had a similar website to the Petitioner which included the Portugese language and shipping packages to Brazil as well. See, **exhibit13.**

The government failed to provide the document that any account was created or used without authorization under B&H Photo. And the witnesses testified that they knew the account was legitimate. D.E.-475:38-39; D.E.-475:28-29. See, exhibit 14. (motion to request new trial). On the spread-sheet, the government mentioned 73 invoices under B&H Photo account. However, those invoices were repeated on 93 occasions. This particular spreadsheet had a total of 1104 invoices repeated. See, exhibit 15.

The appeal attorney knew that a prosecutor has a duty to provide all evidence to the Petitioner. BRADY V. MARYLAND, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). However, he failed to compel those materials as well as failing to review the evidence provided to him by the Petitioner, so he could appeal the case effectively.

### D) FAILED TO APPEAL RIGHT TO CALL WITNESS.

Before trial, the Petitioner submitted to the Court a witness list which after the Court conducted examination and asked the Petitioner what each juror would testify, the Court granted 29 witness. Four (4) weeks into the trial, the previous judge stopped the trial for one week. The following Friday, the Judge called on the Petitioner and Court to review the list of witnesses again after those initial witnesses had been approved and subpoena. Thus, the Court recused from the list 29 witnesses, the Petitioner was denied the right to call further witnesses and consequently his consti-tutional rights were violated. Had the Petitioner been allowed to call all the witnesses, the outcome of the trial could have been different.

Nevertheless, Klugh failed to include the issue in his appeal brief as requested by the Petitioner. See exhibit 16.

## E) GIGLIO VIOLATION

### 1. <u>IMMUNITY TO WITNESSES</u>.

Pursuant to 18 U.S.C. § 6001 and § 6003, immunity in exchange for testi-mony to the government can only be obtained if granted by the Court. <u>UNITED STATES v. DONAHERY, (19761 CAS FLA) 529 F.2d 831</u>, and the government must provide a defendant with a list of all witnesses that were granted immunity before trial. <u>UNITED STATES v. BRIGHTON BLDG & MAINTENANCE CO., 434 F. Supp. 222, 1977 U.S. (1977)</u>.

During the Petitioner's cross-examination of his wife Ailyn Mollinedo, he asked the witness whether she had received immunity. D.E.-474:22. The government objected and the Court called side-Bar. D.E.-475:22.

The government denied giving the Petitioner's wife immunity despite the Petitioner introducing a letter which was attached to the plea offered showing that immunity was provided. D.E.-474:22, D.E.-474:23. After the government concluded her redirect the Court called the parties  to another side-bar. At this point the judge again engaged in correcting prosecution misconduct, by allowing the prosecution to ask leading questions of the Petitioner's wife so she would agree with the immunity offer. Despite that the government had already denied giving the witness immunity, the Court allowed the jury to believe that immunity was granted. D.E.-474:66. See also, **exhibit 17 (government letter and contradictory statement made by the judge)**.

Here, prosecutors duty to present all material evidence before trial was not fulfilled. Such conduct constitutes a violation of due process and this case requires a new trial. <u>NAPUE v. ILLINOIS, 360 U.S. 264, 3 L. Ed. 3d 215, 83 S. Ct. (1963)</u>.

The Petitioner vigorously cross-examined his wife seeking to discredit her testimony by revealing the possible agreement or arrangement for leniency in any possible offense. The trial Court did not undertake to resolve the conflict of the prosecution letter mentioning immunity and the fact that the Petitioner was still legally married to Mollinedo and still is today. Rather, the Judge abused her discretion to proceed with her theory for the jury that Mollinedo had been granted immunity.

The Petitioner asserts that his due process rights were violated. This particular immunity was not requested from the Attorney General or designate office of the DOJ. Thus, the Court abused its discretion in telling the jury that immunity was provided. UNITED STATES v. DODDINGTON, 822 F.2d 818, 1987 U.S. app. 885 (1987). However, the record and the statements mentioned by both, the prosecution and Ms. Mollinedo reflected different facts from what the Court allowed the jury to believe. UNITED STATES v. HOOK, 848 F.2d 785; 1988 U.S. appx. Lexis 7966, 88-1 (1988). If immunity was granted in this case, the immunity did not follow justice department guidelines and consequently violated the Petitioner's constitutional rights.

The Petitioner requested the appeal attorney to include on the appeal brief this serious GIGLIO violation and abuse of discretion. The attorney failed to do so and consequently the Petitioner was denied his substantial rights.

## 2. RECRUIT CONVICTED INMATE.

The government in this case    attempted in different ways to force the Petitioner to plead guilty, by  threatening friends, witnesses, and creating a theory that the Petitioner was looking to kill the FBI agent

and his wife.

The Petitioner contends that John Jackson, ex-cell-mate was recruited by the government with sole purpose to sabotage the Petitioner's defense, and to suppress exculpatory evidence  which was given to the FBI agent Vanbrunt by Jackson himself. Thus, after the government was informed by Jackson who the Petitioner intended to bring into Court to testify, three (3) defense witnesses became government witnesses. Carla Felini, ex-fiance, Ailyn Mollinedo, currently wife, and Renata Mezentsef, ex-employee. Despite the detention ordered which mentioned that the Petitioner must be separated from persons waiting or serving sentence, the Petitioner was conveniently put in a cell with a professional snitch **JOHN JACKSON**.

Janckson was sentenced to 97 months imprisonment for medicare fraud, with a restitution over 11 million dollars and served only 22 months before being released. See, **exhibit 8 and 18 (detention order and jackson's rule 35s).**

Recently, the Petitioner's family received two separate calls from two inmates, Marco Correa and Gerson Gomes. Those inmates stated that Jackson had provided assistance to the government in the Petitioner trial defense. In fact, those inmates also stated that other snitch inmates were involved in creating another case alleging that the Petitioner wanted to kill the FBI agent and his wife.

Correa stated that Jackson took numerous items of evidence from the Petitioner's cell possessions. In fact, the record shows that the Petitioner stated before that the Duarte Letter and video were taken by the government. This type of prosecutorial misconduct justifies the vacation or dismissal of the case where it so infect[s] the trial with unfairness as to make the resulting conviction a denial of due process. DARDEN v. WAIWRIGHT, 477

U.S. 168, 181 (1986)(quoting DONNELLY v. DECHRISTOFORO, 416 U.S. 637, 643 (1974)) The evidence hereby mentioned as exhibit 18 shows that the FBI agent was in communication with Jackson. Despite the false and misleading statement given by the agent himself, he went to the Petitioner's mothers house and took the DVR which contained the Sex Video. See, **exhibit 18 (motion requesting new trial).** see also, exhibit 18 (FBI unfiled document).

The Petitioner's appeal attorney was provided with this evidence and requested to include this prosecutorial misconduct on the appeal brief. That along with the Court's abuse of its discretion in regarding immunity to Mollinedo. The attorney failed to include those issues in the appeal and he therefore consequently violated the Petitioner's constitutional rights.

### F) GOVERNMENT PERJURY TESTIMONY

The Petitioner requested the appeal attorney to include in the appeal brief the government perjury testimony and the attorney failed to do so.

### 1. FBI AGENT VANBRUNT.

On numerous occasions during cross-examination, FBI agent Vanbrunt provided to Court perjury testimony. In fact the record clearly shows that the agent called on the petitioner's witness  to prevented him from testifying. D.E.-478:56. See also, **exhibit 19 (motion rule 33(b)).**

Mr. Wolf's free unhampered choice to testify was interfered with by agent Vanbrunt's illegal and unauthorized phone call to the witness.

SCOTTON: Did you receive any call from FBI agent
          Roy Vanbrunt?

WOLF: I have received calls from people regarding this
      case in the last week or so, yes.

SCOTTON: And the FBI called you too?

WOLF: I do believe the FBI call me.

SCOTTON: ..."calls that you have received the last couple
         of day" of prosecutor or FBI agent?

WOLF: "Roy Vanbrunt. I receive a call by the FBI agent by
      the name Roy."

SCOTTON: And did you talk about the report?

WOLF: Yes I did.

D.E.-480:84-85-86-87-88.

The agent denied ever talking to Mr. Wolf. D.E.-478-56. Given this clear
and dramatic evidence of prosecutorial misconduct this conviction must
be vacated and set aside.

Despite the Judge's allegation that the Petitioner requested the govern-
ment to contact Mr. Wolf to facilitate his apparance in Court, there is
no evidence at all to support this statement. Rather, the Petitioner had
his investigator and stand-by attorney contact the witness. See **exhibit
20**. Nevertheless, the FBI agent perjured himself under oath and prevented
the Petitioner from presenting the witness. Consequently his due process was violated.

2. FRED BOOKS.

On March 29 during the detention hearing, the government introduced
a document purporting to be from immigration alleging that the Petitioner's
I485 application was denied. The document contained no date, no officer's
name, any government seal, no signature or the Petitioner's correct name
and address. Two days later on Saturday, March 31, 2012, the Petitioner's
I485 application was officially denied. In short, the undated unsigned letter
introduced in court on March 29, 2012 purporting to be a denial, had no

(29)

no validity. when  the Petitioner objected to the undated letter during in
another hearing in late June 2012, the government then claimed that the
letter was a draft only.

The Petitioner's immigration interview was held on August 31, 2011.
During the trial government witness Fred Books testified that he was trans-
fered to Kendall Field Office shortly after Scotton's interview toward
his I-485 application. D.E.-473:52. Later he changed his testimony now
saying that he was immediately transfered to Kendall Field Office. D.E.-
473:62. Books testified that the letter introduced on March 29, 2012
was a draft made from numerous templates from his computer. D.E.-473-60.
Books could not give the date that he drafted the letter or to who he
had emailed such letter. D.E.-473:49; D.E.-473:53-54; D.E.-473:60-61.

The government failed to provide the email that the INS officer sent to
the Oakland Park Office with the draft letter or any evidence when it was
created and sent or even when such was requested from Books.

The Petitioner contends that **exhibit 21** shows that on November 18,
2011, Fred Books provided to FBI agent Vanbrunt, the VHS tape containing
the Petitioner's immigration interview. See **exhibit 21**. This document
shows that the transaction took place in the Miami Field Office rather
tham Oakland Park field Office where the Petitioner's interview took place
or even Kendall Field Office where Books was allegedly working. There is no
evidence that a proper warrant was requested or approved by the Court
for the VHS tape. Rather the VHS tape was taken from the Oakland Park
Field Office by an employee who no longer worked there.

When asked during the trial, Books denied giving the tape to the FBI
agent. D.E.-473:49; D.E.-473:94; D.E.-473:-64. However, the evidence hereby

attached clearly shows differently. By reviewing the record and exhibits evidence, the Court will see that Books testimony is perjury and bears no relation to the truth. D.E.-473:49; D.E.-473:52-53-54-55; D.E.-473:59; D.E.-473:74; D.E._473:83; D.E.-473:85; D.E.-473:94-95-96-97.

This prosecutory misconduct and perjury testimony is clear evidence that should ultimately leads to the conviction being vacated and sent for a new trial.

### G) FAILED TO CHALLENGE ALLEGED OFFENSE UNDER MAIL FRAUD STATUTE PURSUANT TO 18 U.S.C. § 1341.

The government alleged crime committed by the Petitioner does not fall under mail fraud pursuant to 18 U.S.C. § 1341. The Petitioner ran a legitimate registered internet retail store throughout the Brazilian community and Brazil, none of whom have ever been defrauded or lodged in one complaint against him. The allegation however, states that the Petitioner used FedEx, UPS and DHL shipping services without paying the shipping costs. As such, it is no surprise that the jury was confused about this entire prosecution and sought guidance from the Court as to what crime had actually been committed. There was no explanation in response to their questions addressed in a note. See, **exhibit 23 (jury note)**. See also, UNITED STATES v. HEWERS, 729 F.2d 1302, 1320 (11th cir. 1984); UNITED STATES v. HASSON, 333 F.3d 1264, 1270 (11th cir. 2003).

The problem here is a billing issue, which is a civil matter, not a federal one. The charges bear no relation whatsoever to the acts that the government allegedly accused the Petitioner.

**SUPPORT FACTS:** The Eleventh Circuit holds that, "[t]he mail fraud

statute 18 U.S.C. § 1341, does not define what constitutes a scheme to defraud. In the absence of a statutory definition, the Courts have provided a judicial framework for conceptualizing a fraud scheme." BRADLEY v. UNITED STATES, 644 F.3d 1213 (11th cir. 2011)(citing UNITED STATES v. PENDERGRAFT, 297 F.3d 1198, 1208 (11th cir. 2002)("[t]he meaning of such scheme to defraud has been judicial defined"). In defining a scheme to defraud, the judiciary did what congress could not effectively legislate bills of attainder and ex post fact of laws.

Congress's abdication of its duty to define criminal conduct resulted in the judiciary creating a typical-for-lawyers imprecise definition of a scheme to defraud as a "reflection of moral uprightness of fundamental honest, fair play, and right dealing in the general business life of a member of society." BRADLEY, 644 F.3d at 1240 (quoting GREGORY v. UNITED STATES, 252 F.2d 104, 109 (5th cir. 1958); which in turn quotes HAMMERSCHIMAT v. UNITED STATES, 265 U.S. 182, 188 (1924). In fact the judicial defines a fraud as what 12 members of a jury believe is unfair. A paradigmic example of vague; a definition that charges with each jury. More precisely, the definition is even more amorphous, because the element's defination really is determined by what a panel of appellate Judges believe are the normative concepts of fair play and honest dealing in a particular community or trade.

To be sure this system--all system--depends on the experience, intellect, and common sense of human beings to decide uncertain facts. The hallmark of facts is they can  at last theoretically be proved or disproved, and minimally they must be subject to proof. The concepts of fair play and honest dealing are more fluid and not subject to proof.

In this case the Court could no more identify the boundaries of a

fraud than congress could. Thus, the Court adopted notary and "it depends" analysis, but transferred responsibility for defining the crime allegedly to the jury. In fact the jury note has presented substantial doubts and failure to finding the elements of crime which was alleged on the indictment. See, **exhibit 23**. Thus, the judiciary's slippery definition had the effect of kicking the can down the road to the jury. The jury now decides what legislated fraud is: Whatever the jury believes is not morally upright or is unfair or is dishonest, Although for first amendment concerns it may be all right for the finding facts to decide what something is when "they see it."

Here in this case, the government failure to provide a proper, precise definition of scheme to defraud invalidats the fraud statutes as being impermissibly  vague, forcing a jury to make a post hoc finding about what is a scheme to defraud. Thereby, making arguably legal conduct criminal; and more abstractly permitting 12 unelected-citizens-to-define-criminal- conduct; and impermissible (unconstitutional) delegation of legislative duty.

The Petitioner challeges his conviction under § 1341 because  it was not "money or property" within the meaning of the mail fraud statute. Rather, here in this case we have an alleged billing issue, in which the companies failed to present the detailed business records or made any attempt to collect any outstanding invoices from the Petitioner. UNITED STATES v. LONEY, 959 F.2d 1332, 1337 (5th cir. 1992). Following the logic, the mail fraud would not extend to a fraudulent scheme to induce a seller to sell a product at a discounted but still profitable price because the seller would not have made any profit at all but for the fraud. However, in this

case, the government alleged that on 27 occasions the Petitioner shipped
27 packages under his own accounts or other entitled accounts without
authorization and caused those packages to be delivered which allegedly
caused losses to the companies. During trial, the government displayed 27
packages which were alleged to be the 27 packages on the indictment. Those
packages were not mentioned on the spreadsheets, nor given any loss amount.
It is clear to see that those packages mentioned on the indictment by
the government were not actually accounted for or delivered, therefore
no loss could have occurred.

The government failed to prove losses or mail fraud pursuant to §
1341. In fact the amount derived from calculation is clearly in error.

The Court used the face values based on anaudited and unverified repeat
spreadsheets and contradictory testimony.

The Supreme Court has held in other cases that § 1341 properly defined
a criminal scheme to defraud that involved bribes or kick backs. Thus,
the intent to defraud by causing mail to be delivered was incorrect and
does not fall in this case under section 1341 as nothing was ever illegally
mailed or sent by a private or commercial interestate carrier to obtain
money and property fraudulently. Whether those packages were shipped from
the Petitioner's own accounts or shipped under another without authorization,
it is a billing issue that falls under civil law.

Furthermore, the jury instructions are invalid under § 1341. YATES v.
UNITED STATES, 354 U.S. 298, 312 77 S. Ct. 1064, 1 L. Ed. 2d 1356.

Pursuant to SKILLING v. UNITED STATES, 558 U.S. 130 S. Ct. 393, 175
L. Ed. 2d 267 (2009), the Petitioner's conviction could not stay and the
indictment rested in part, on an improper construction of "mail fraud"

to defraud by causing mail to be delivered. See 18 U.S.C. § 1341. Compare SKILLING where it is similar that infirmity is present in the case. Here, the government and appeal attorney advised an interpretation of § 1341 previously rejected by the Supreme Court's opinion in SKILLING.

   At the trial, the government renders the alternative theories of (1) money-or-property fraud and (2) a scheme to defraud. The government alleged that the Petitioner used accounts under his own name to ship packages without paying for the shipping services, or fraudulently creating accounts in other entities names to ship packages under his own account, there is not a finding factual element of crime under the meaning of mail fraud. Rather, it is a billing issue. Whether other accounts were used or created without authorization, still is a billing issue because those companies offered different methods of payment for the shipping services. Whatever the selected method it is still a billing issue which could not be established under § 1341 in this case. YATED v. UNITED STATES, 354 U.S. 298, 312, 77 S. Ct. 1064, 1 L. ed. 2d 1356 (1957); SKILLING v. UNITED STATES, 558 U.S. 130 S. Ct. 393, 175 L. Ed. 2d 267 (2009); WEYHRAUCH v. UNITED STATES, 557 U.S. 129 S. Ct. 2863, 174 L. Ed. 2d 575 (2009); MCNALLY v. UNITED STATES, 97 LED 2d 292, 483 US 350 (1987).

   The Petitioner contends that he advised his attorney to challenge § 1341 and include  the issue on the appeal brief. However, the attorney failed to do so. Consequently the attorney violated the Petitioner's constitutional rights.

## CONCLUSION

The Petitioner has endeavored to bring justice to his case and prove his innocence for more than 5 years and has attempted to bring to the Court's attention multiple judicial error of law, misrepresentation of evidence, contradictory and perjured testimony and abuse of discretion which combined, caused extreme prejudice to the Petitioner, and led to a verdict of guilty for an alleged crime he did commit.

Therefore, in the interest of justice, the Petitioner moves this Honorable Court to grant an evidentiary hearing to examine his claims laid out in this § 2255.

Following this review, it is envisaged that sufficient grounds will exist to vacate and set aside this conviction which was based on inadequate and unsubstantiated evidence, false and misleading testimony and prosecutorial misconduct.

Respectfully Submitted,

ROGERIO CHAVES SCOTTON
REG NO: 99370-004
D. RAY JAMES C.F.
P.O. BOX 2000
FOLKSTON GA 31537

(36)

## PROOF OF SERVICE

I Rogerio Chaves Scotton, do certify that on this *DEMBER 11, 2017*
I have served the attached application and memorandum of law pursuant to
§ 2255 (which is under the Petitioner constitutional rights) on the Southern
District of Florida in the above proceeding. I have served this motion via,
United States Postal Service (USPS) certified mail through, D. Ray James
C.F. legal mail.


ROGERIO CHAVES SCOTTON
REG NO: 99370-004
P.O. BOX 2000
FOLKSTON GA 31537

(37)